UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

WILLIAM L.,                                          Case No. 6:23-cv-00795-AR

                Plaintiff,                          OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff William L. (his last name omitted for privacy) challenges the Administrative

Law Judge's (ALJ) evaluations of his symptom allegations and the lay witness testimony of his

wife. As further explained below, the ALJ did not find malingering, and therefore, the clear and

convincing standard applies to evaluate plaintiff's subjective symptom allegations. Although the

ALJ erred in discounting plaintiff's testimony based on his activities of daily living, the ALJ

Page 1 – OPINION AND ORDER

identified other clear and convincing reasons that are supported by substantial evidence and,
therefore, that error is harmless. Likewise, any error in omitting discussion of the lay testimony
is harmless because the lay testimony did not describe limitations beyond those that were
identified by plaintiff and properly discounted by the ALJ. The Commissioner's decision is
therefore AFFIRMED.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on April 15, 2019,
alleging disability beginning November 1, 2018. (Tr. 242.) His claim was initially denied on
September 6, 2019, and again upon reconsideration on May 8, 2020. (Tr. 88, 103.) Afterward,
plaintiff filed for a hearing that was held before the ALJ on March 29, 2022. (Tr. 45.)

In denying plaintiff's application, the ALJ followed the five-step sequential evaluation
process.[2] At step one, the ALJ determined plaintiff had not engaged in substantial gainful
activity since November 1, 2018, his alleged onset date. (Tr. 21.) At step two, the ALJ
determined that he had the following severe impairments:

> degenerative disc disease of the lumbar spine with lumbar radiculopathy; obesity;
> traumatic brain injury (TBI)/closed head injury with post-concussion syndrome; a
> depressive, bipolar, or related disorder (variably called unspecified depressive
> disorder, depressive disorder, or depression); an anxiety disorder (variably called
> unspecified anxiety disorder, anxiety, mixed anxiety depressive disorder, or
> anxiety disorder); and posttraumatic stress disorder (PTSD).

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have
consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28
U.S.C. § 636(c).

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20
C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not
disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481
F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

(Tr. 21.) At step three, the ALJ determined that plaintiff's impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 23.)

The ALJ determined that plaintiff has the residual functional capacity (RFC), 20 C.F.R. § 404.1545, to perform a reduced range of medium work with the following limitations:

> He can stand and/or walk [six] hours and sit [six] hours of an [eight]-hour workday. [He] can never climb ladders, ropes, or scaffolds, and he can frequently stoop, crouch, or climb ramps and stairs. He can tolerate no exposure to hazards, including unprotected heights or operating heavy machinery. Mentally, he is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions. He can tolerate no more than occasional interaction with coworkers and supervisors, cannot perform team or tandem work, and can have no interaction with the general public.

(Tr. 25-26.)

At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 36.) In light of his age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as laundry worker and hand packager. (Tr. 37-38.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the

evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *Plaintiff's Symptom Testimony*

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discounting his subjective symptom testimony. Plaintiff contends that, after he was in a catastrophic car accident in 2015, he cannot engage in full-time, competitive employment because of his physical and mental health conditions, including traumatic brain injury, migraines, memory loss, nerve pain, anxiety, panic attacks, neck/spinal cord injury, and motor function impairment. (Tr. 64; 309.) In his 2019 function report, plaintiff wrote that he cannot go outside or drive, and that he rarely leaves the house without experiencing anxiety and panic attacks. (Tr. 345.) He also does not handle stress well and does not get along with authority figures. (Tr. 350-51.) Plaintiff described his daily activities as doing daily chores, completing "honey do's," taking care of his two grandchildren, and playing video games. (Tr. 346, 348, 349.) In a function report from 2020, plaintiff wrote that he cannot be outside for more than thirty minutes, due to dizziness and headache. (Tr. 373.) He again described his daily activities as including household chores, taking care of his two grandchildren, and playing video games. (Tr. 373.)

At his hearing, plaintiff testified that he was fired from his last job for being "unprofessional" and trying to "physically attack" his manager. (Tr. 65.) He has a hard time interacting with "lazy people" and he does not trust anyone anymore. (Tr. 65-66.) His anxiety is his "prison" and he does not go out in public because he does not know "how to react to things anymore." (Tr. 66.) Plaintiff also forgets to take his medications and needs help managing his calendar of appointments. (Tr. 68.) His testimony also included that he has constant headaches,

Page 4  – OPINION AND ORDER

has tremors in his hands, cannot sit for more than 30 minutes, and has used a walking stick for about two years to prevent himself from falling. (Tr. 70, 72, 74, 75.)

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ concluded that evidence of symptom magnification and malingering "argue[d] against assessing limitations consistent with [plaintiff's] allegations." Tr. 28. The ALJ also discounted plaintiff's subjective symptom testimony because: (1) plaintiff's activities of daily living were inconsistent with his claimed limitations; (2) his symptoms improved with treatment and his treatment history was limited; and (3) objective medical records did not support the level of limitations he alleged.

1. **Evidence of malingering**

The Commissioner argues that the ALJ found "affirmative evidence of malingering" and was therefore not required to provide clear and convincing reasons to discount plaintiff's symptom testimony. (Def. Br. at 3-5.) The clear-and-convincing standard does not apply where the record evidence contains "affirmative evidence showing that the claimant is malingering." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (citation omitted); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Evidence that a claimant is exaggerating symptoms in order to manipulate an objective psychiatric test can itself constitute evidence of malingering that "relieve[s] the ALJ from the burden of providing specific, clear, and convincing reasons." *Baghoomian v. Astrue*, 319 F. App'x 563, 565 (9th Cir. 2009). Additionally, evidence of symptom exaggeration may constitute a clear-and-convincing reason to discount testimony regarding impairment severity. *See Austin v. Saul*, 818 F. App'x 725, 727 (9th Cir. 2020) (evidence that the claimant exaggerated his need for a crutch was a clear-and-convincing reason to reject his subjective symptom testimony); *Haynes v. Colvin*, 614 F. App'x 873, 875 (9th Cir. 2015) ("[T]he ALJ appropriately considered the possibility of symptom exaggeration in the context of secondary gain in light of the shifting bases for [the claimant's] complaints.") (internal brackets and quotations omitted).

The ALJ noted that several medical specialists raised the possibility that plaintiff engaged in overreporting, symptom magnification, secondary gain, and malingering. (Tr. 28.) Based on that evidence, the ALJ observed that such reports weighed against assessing limitations consistent with plaintiff's symptom allegations. (Tr. 28.) For example, the ALJ discussed that in 2016, independent medical examiners, Donna Wicher, Ph.D., and Stephen Ireland, M.D., raised questions of malingering and symptom magnification in connection with plaintiff's worker's

compensation claim following his 2015 accident. (Tr. 28-29, citing Tr. 422-23, 427-28, 430, 438,

439, 440, 441.) The ALJ, however, found both Dr. Wicher's and Dr. Ireland's opinions to be

unpersuasive for the relevant time period because they "predate[d] the alleged onset date by

several years and focused on the worker's compensation injury." (Tr. 32.) The ALJ rejected both

opinions for the relevant time period, and the court therefore does not consider either opinion to

constitute affirmative evidence of malingering. *Austin*, 818 F. App'x at 727-28 (rejecting the

Commissioner's argument that a partially rejected medical opinion constituted affirmative

evidence of malingering).

The ALJ also noted a 2021 neuropsychological evaluation by examining William

Trueblood, Ph.D., who concluded that plaintiff's neurocognitive tests were "unlikely to be valid"

due to "not identifiable" causes. (Tr. 29, citing Tr. 551.) Dr. Trueblood found, the ALJ noted, no

apparent "factors or combination of factors" in plaintiff's history to cause the degree of

impairment in his functioning. (Tr. 30, citing Tr. 551.) However, the ALJ's analysis ignored that

Dr. Trueblood identified several possible reasons for the invalid test results, including

nonstandard testing conditions, plaintiff's high stress levels, and possible (though unlikely)

severe neurocognitive impairment. (Tr. 551.) Additionally, Dr. Trueblood addressed the

possibility of "intentionally poor performance" by plaintiff but emphasized that there were "not

bases to draw that conclusion." (Tr. 551.) Considering that Dr. Trueblood's assessment was

equivocal on the validity of the test results, it is unclear to the court how the ALJ concluded

otherwise. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[t]he ALJ must do more

than offer his conclusions . . . [h]e must set forth his own interpretations and explain why they,

rather than the doctors', are correct."). Moreover, the ALJ did not assess the persuasiveness of

Dr. Trueblood's medical opinion, as required by the agency rules. *See* 20 C.F.R. § 404.1520c(b)

Page 7  – OPINION AND ORDER

("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record"). Although neither the plaintiff nor the Commissioner raised this issue, the ALJ's failure to evaluate the persuasiveness of Dr. Trueblood's opinion further frustrates the court's ability to meaningfully review the ALJ's analysis on this point. Therefore, the court cannot conclude that the ALJ found affirmative evidence of malingering. Accordingly, the ALJ was required to identify clear and convincing reasons to discount plaintiff's symptom testimony.

### 2. Activities of Daily Living

An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living (ADLs). *See* 20 C.F.R. § 404.1529(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Plaintiff argues that the ALJ improperly "sought to undermine some unspecified aspect" of his symptom testimony based on his activities of daily living. (Pl. Br. at 4.) This error, according to plaintiff, arises out of the ALJ's failure to specify whether the activities cited by the ALJ were performed throughout a substantial part of the day or whether the activities had workplace transferability. (Pl. Br. at 4.) Plaintiff further alleges that the ALJ erred in failing to link the cited activities to specific testimony that those activities undermined. (Pl. Br. at 5.)

Finally, plaintiff asserts that the ALJ improperly relied on his activities to undermine an allegation of total disability, despite his never having alleged total disability. (Pl. Br. at 5-6.)

The ALJ discounted plaintiff's testimony because his activities of daily living were inconsistent with "the severity of reported symptoms" and "undercut a finding of total disability." (Tr. 27.) The ALJ pointed to plaintiff's function reports, noting plaintiff was "independent in personal care activities" and other activities of daily living, including "preparing simple meals and doing light cleaning." (Tr. 27, citing Tr. 345-52; 373-81.) The ALJ further noted that plaintiff plays video games and helps care for his grandchildren each day. (Tr. 27.) Finally, records from 2021 cited by the ALJ indicated that plaintiff was working on his truck to get it ready for sale. (Tr. 27, citing Tr. 593.) The ALJ's findings here are not supported by substantial evidence.

The Ninth Circuit has repeatedly held that carrying out minimal daily activities such as light household chores does not detract from a claim of disability. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff did not describe more than minimal household chores in his function reports or his hearing testimony. Additionally, the ALJ did not inquire into the circumstances surrounding plaintiff's childcare activities and references to preparing his truck for sale. The ALJ first assumed, without clarifying, that plaintiff was caring for his grandchildren unassisted for 32 hours a week. (Tr. 27.) Indeed, the ALJ repeatedly relied on the assumption that plaintiff is the primary caregiver for the grandchildren, but records do not substantiate that conclusion. (*See* Tr. 24, 27, 31, 35.) Plaintiff's 2020 function report states only that he "helps" get the children ready for school, and "helps" get them ready for bed in the evening. Plaintiff later submitted a declaration, which was added to the record by the Appeals Council, stating that his wife and daughter are the primary caregivers for his grandchildren, and that he is alone with

Page 9  – OPINION AND ORDER

the children for a maximum of two hours a week. (Tr. 415.) The ALJ similarly failed to inquire as to what type of work and under what circumstances plaintiff was performing work on his truck. Instead, the ALJ pointed to a single note from a counseling session and concluded that whatever work was being done was sufficient to detract from his symptom testimony. (Tr. 593.) The examples the ALJ relied on fall far from the substantial evidence standard required by the court. As such, the ALJ erred in discounting plaintiff's symptom testimony based on activities of daily living. However, as discussed below, the error is ultimately harmless, because the ALJ provided additional reasons backed by substantial evidence that are clear and convincing to discount plaintiff's testimony. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (upholding the ALJ's overall credibility finding despite finding two factors the ALJ relied on to be invalid).

### 3.  Improvement with Treatment and Limited Treatment

The ALJ discounted the severity of symptoms plaintiff testified to because his symptom testimony improved with treatment. (Tr. 27.) Plaintiff argues that the ALJ improperly relied on medical improvement to undermine "some unspecified aspect" of his symptom testimony. (Pl. Br. at 8.) According to plaintiff, the ALJ failed to define the extent and duration of improvements of balance and mobility. (Pl. Br. at 8.) Furthermore, plaintiff contends that the ALJ provided no evidence that improvements to "balance and mobility" equates to an RFC at the medium range of exertion. (Pl. Br. at 8.)

An ALJ may consider evidence of improvement when assessing the functional limitations of a claimant. 20 C.F.R. § 404.1520a(c). However, an ALJ may not rely on "a few isolated instances of improvement in the medical record as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citation omitted). Mental health symptoms wax and

wane, and an ALJ commits reversible error by cherry-picking the record for facts that support a non-disability determination. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the [claimant's] overall well-being and the nature of her symptoms." *Id.* (citing *Ryan v. Comm's of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)); *see also Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (the ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained). Those symptoms, however, may also improve during treatment. "With adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders." 20 C.F.R. pt. 404, subpt. P, app. 1 (2014). Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See* 20 C.F.R. § 416.920a(c)(1); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling") (citations omitted).

Additionally, an ALJ may rely on limited treatment or lack of treatment when considering a plaintiff's symptom allegations. *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 16-3p, *available at* 2017 WL 5180304, at *9 (ALJ may consider frequency and extent of treatment sought when evaluating the alleged intensity and persistence of a claimant's symptoms).

The ALJ relied on physical therapy records stating that plaintiff was doing well, had improved balance and mobility, and that he was "more active and more social." (Tr. 28, citing Tr. 631, 633.) The ALJ cited plaintiff's ability to work on his truck, suggesting he retained "adequate dexterity and coordination." (Tr. 28, 30.) The ALJ further stated that plaintiff's mental status findings improved with treatment. (Tr. 31, citing Tr. 593.) The ALJ pointed out that

treatment notes for a November 18, 2018, annual medical exam stated that he "continue[d] to do well on Prozac and propranolol" and needed only infrequent diazepam for anxiety. (Tr. 30, 406.) Additionally, plaintiff sought no significant treatment between November 1, 2018, his alleged onset date and December of 2019. The ALJ's finding as to improvements in plaintiff's physical health are supported by substantial evidence; however, the ALJ's findings as to improvements with plaintiff's mental impairments are not supported by substantial evidence.

For example, the ALJ discussed that plaintiff's physical therapy records showed that he consistently improved his overall functionality during treatment. Medical records from February 11, 2022, show that plaintiff re-initiated physical therapy to address a host of issues including headaches, loss of balance, and decreased functional mobility/activity tolerance. (Tr. 623.) At his treatment intake interview, plaintiff told his physical therapist that he was able to take walks with his wife but was limited to one mile due to increasing headache and leg pain. (Tr. 623.) Subsequent treatment notes show that plaintiff steadily improved. For example, treatment notes stated that plaintiff had "[g]ood gains in mobility" (February 23, 2022); "has been taking walks, overall doing [] better with balance and mobility, has been more active and more social" (March 9, 2022); "[h]as been walking consistently, feeling more confident and stable" and had "no headache today" (March 16, 2022). (Tr. 630, 631, 633, 634.) Based on those records, the ALJ could reasonably conclude that plaintiff's overall physical health improved during the relevant period – a finding supported by substantial evidence.

In contrast, substantial evidence does not support the ALJ's finding of improved mental health symptoms. Rather, plaintiff's mental health exams demonstrate varying degrees of consistently poor mental status findings. (*See, e.g.*, Tr. 501, 518-19, 520-21, 574, 576, 578, 582, 593.) "Reports of 'improvement' in the context of mental health issues must be interpreted with

Page 12  – OPINION AND ORDER

an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017 (citation omitted) (citing *Ryan*, 528 F.3d at 1200-01); *see also Attmore*, 827 F.3d at 877-79 (ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained). The ALJ again relied on assumptions as to plaintiff providing care for his grandchildren, stating that "despite abnormal mental status findings, [plaintiff] was the primary caregiver for two grandchildren on an almost 40 hour/week basis while his wife was at work." (Tr. 31.) As discussed above, that finding is not supported by substantial evidence because the record does not disclose the duration, frequency, and level of care that plaintiff was providing to his grandchildren.

The significant gap in plaintiff's medical treatment, however, is an appropriate basis upon which to discount plaintiff's subjective symptom testimony. Indeed, as the ALJ determined, there are no records showing that plaintiff sought treatment for either his physical or mental ailments after his alleged onset date until December 2019, over a year's time. (Tr. 496-97.) Based on the absence of treatment, the ALJ reasonably concluded that plaintiff's subjective symptoms were not as disabling as alleged. *Molina*, 674 F.3d at 1112 (ALJ may discount claimant's testimony based on "unexplained or inadequately explained failure to seek treatment") (internal quotation marks and citation omitted).

In short, the ALJ's findings that plaintiff's physical limitations improved with treatment and the gap in treatment are supported by substantial evidence in the record and, when combined, provide a clear and convincing basis to discount plaintiff's subjective symptom testimony.

\ \ \ \ \

\ \ \ \ \

### 4. Inconsistency with Objective Medical Evidence

Plaintiff argues that the ALJ incorrectly interpreted the objective medical evidence, and improperly concluded that plaintiff's "physical examination findings were fairly minimal." (Pl. Br. at 7.) Specifically, plaintiff takes issue with the ALJ's interpretation of "profound radiographic findings" from a single emergency room visit and accompanying MRI in March 2022, wherein plaintiff was diagnosed with lumbosacral radiculopathy with his right nerve root described as "flattening." (Pl. Br. at 7.) However, plaintiff failed to identify any legal error connected with the ALJ's objective evidence analysis in his opening brief. Only in his reply brief did plaintiff clarify that his argument turns on the premise that the ALJ failed to link evidence to specific symptom testimony. (Pl. Repl. Br. at 10.) Either way, plaintiff's argument fails because the ALJ properly evaluated the objective medical findings from the 2022 emergency room visit.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. A lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). But when coupled with other permissible reasons, objective medical evidence may be used to discount a claimant's testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

The ALJ discussed that the examination findings were minimal, with tenderness to palpitation and reduced strength rated at 4/5 in his right leg, yet all other extremities retained normal strength and reflexes. (Tr. 28, citing Tr. 638.) Moreover, as the ALJ pointed out, the consulting neurosurgeon did not recommend surgical intervention and noted that plaintiff was a

"good candidate" for outpatient management of his symptoms. (Tr. 28, citing Tr. 640.) Plaintiff was discharged from the emergency room with a limited prescription for methylpredisone, a short course of oxycodone, and gabapentin. (Tr. 640.) Plaintiff was further instructed to take Tylenol and ibuprofen at home. (Tr. 640.) The ALJ also noted that plaintiff's 2022 physical therapy records revealed improved balance and mobility, increased activity, and consistent walking. (Tr. 28.) Based on that evidence, the ALJ could reasonably conclude that the objective medical evidence did not support the severity of his asserted physical limitations. Thus, the ALJ did not err in his analysis of the objective evidence connected to plaintiff's 2022 emergency room visit and accompanying MRI results. Furthermore, the ALJ sufficiently explained his conclusions as to the 2022 spinal MRI findings and plaintiff's symptom testimony, and the court can follow his reasoning.[3] *See Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. 2022) (finding no error where the ALJ's sufficiently explained her reasoning, allowing the court to meaningfully review her decision).

In sum, although the court agrees the ALJ erred in evaluating plaintiff's activities of daily living and his mental health limitations, ultimately those errors are harmless because the ALJ identified other reasons that are supported by substantial evidence that when taken together, provide a clear and convincing rationale for discounting his subjective symptom testimony. Accordingly, the ALJ did not err.

\ \ \ \ \

\ \ \ \ \

---

[3]    The court observes that plaintiff's March 2022 back injury would not meet the 12-month durational requirement. 42 U.S.C. § 423(d) (providing that a "disability" must have lasted or "can be expected to last" for "a continuous period of not less than 12 months").

B.      *Lay Witness Testimony*

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ

must consider unless he "expressly determines to disregard such testimony and gives reasons

germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Omitting discussion of lay testimony entirely is error. An exception to that rule applies, however,

"[w]here lay witness testimony does not describe any limitations not already described by the

claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117; *see also Valentine*, 574

F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for

rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's]

testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for

rejecting her testimony.").

Plaintiff argues that the ALJ erred by rejecting the lay testimony of plaintiff's wife

without comment. Plaintiff asserts that, in the Ninth Circuit, the ALJ must offer reasons germane

for rejecting competent lay testimony. (Pl. Br. at 10.) The Commissioner responds that the ALJ

need not address the lay testimony, as it largely mirrors plaintiff's own testimony, which the ALJ

properly rejected.[4] The court agrees. Plaintiff does not identify limitations described by his wife

that are different from his own testimony. Because the ALJ has provided clear and convincing

---

[4]      The Commissioner also contends that the revised regulations have removed an ALJ's
obligation to provide germane reasons to discount lay witness testimony. The court declines to
address this alternative argument and notes that the issue has not been resolved by the Ninth
Circuit. *See Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10,
2024) (stating the Ninth Circuit has not yet determined whether an ALJ is required to provide
germane reasons to discount lay witness statements under the revised regulations); *Trisha F. v.
Comm'r Soc. Sec. Admin.*, Case No. 6:23-cv-00433-SB, 2024 WL 3409966, at *8-9 (July 15,
2024) (noting same and collecting cases).

Page 16  – OPINION AND ORDER

reasons to discount plaintiff's testimony, that rationale applies with equal force to the lay

testimony. *Molina*, 674 F.3d at 1118-19. The ALJ did not err.

In summary, the ALJ's findings are supported by substantial evidence, and are a

reasonable reading of the record.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

DATED: August 14, 2024

_____

JEFF ARMISTEAD

United States Magistrate Judge